**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| LISA A. HAMMOCK, )<br>)<br>       Plaintiff, )<br>)<br>) Case No. CIV-18-326-RAW-KEW<br>)<br>COMMISSIONER OF THE SOCIAL )<br>SECURITY ADMINISTRATION, )<br>)<br>       Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Lisa A. Hammock (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 52 years old at the time of the ALJ's decision. She has a high school education and worked in the past as an assistant postmaster and maid. Claimant alleges an inability to work beginning on April 5, 2010, due to limitations resulting from depression, joint pain, musculoskeletal pain, arthritis, fibromyalgia, degenerative disc disease, hypertension, visual difficulties, and hysterectomy.

**Procedural History**

On June 4, 2014, Claimant filed an application for a period of disability, disability insurance benefits, and disabled widow's benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social

3

Security Act.  On June 6, 2014, Claimant filed an application for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's applications were denied initially and upon reconsideration.  On December 3, 2015, the Administrative Law Judge("ALJ") Anne H. Pate conducted a video hearing from Dallas, Texas.  Claimant participated from Paris, Texas.  On January 11, 2016, the ALJ entered an unfavorable decision.  Claimant requested review by the Appeals Council, and on April 13, 2018, it denied review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at steps four and five of the sequential evaluation.  She determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error by failing to properly consider and weigh the opinions of her treating physician Dr. Victoria Pardue, D.O.

**Evaluation of Opinion Evidence**

In her decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease of the cervical and lumbar spines, hypertension, and obesity. (Tr. 22).  She determined

4

Claimant could perform light work. In so doing, the ALJ found Claimant could lift twenty pounds occasionally and ten pounds frequently; stand and/or walk six hours during an eight-hour workday; and sit for six hours during an eight-hour workday. (Tr. 24).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform her past relevant work in housekeeping. (Tr. 27-28). Relying on the VE's testimony, the ALJ also determined Claimant could perform the representative jobs of school bus monitor, inspector, and rental counter clerk, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 28-29). As a result, the ALJ concluded Claimant was not under a disability from April 5, 2010, her alleged onset date, through the date of the decision. (Tr. 29).

Claimant contends the ALJ improperly considered the opinions from her treating physician Dr. Pardue, regarding her physical impairments and limitations. Dr. Pardue provided treatment to Claimant beginning in June of 2011, primarily for complaints associated with osteoarthritis at multiple sites. (Tr. 454-56). The treatment records show that she continued to provide Claimant regular treatment through at least October of 2015. (Tr. 329-53, 461-98, 507-23, 554-99).

On January 13, 2015, Dr. Pardue completed a residual functional capacity questionnaire based upon Claimant's physical

5

impairments.[2] She based her opinions on direct observation/treatment, physical examination, historical medical records, patient reporting, her own experience and background, imaging studies, and surgical findings involving Claimant. She noted Claimant's diagnoses of hypertension, low back, neck, and arm pain, osteopenia, depression, and osteoarthritis. Claimant had symptoms of pain, fatigue, and weakness, and Dr. Pardue viewed Claimant's prognosis as poor. Claimant's impairments were expected to last at least twelve months and would constantly interfere with her attention and concentration. Side effects from medication included making Claimant sleepy, stomach upset, and blurred vision.

Dr. Pardue concluded Claimant could sit for fifteen minutes and stand for ten minutes at one time, and she would need to sit in a recliner or lie down each day for two hours. Claimant could sit, stand, and walk less than two hours in an eight-hour workday. She did not need an assistive devise to stand or walk, but Claimant needed a job where she could shift positions at will from sitting, standing, or walking. Claimant would need to take unscheduled breaks and each break would last thirty minutes before returning to work. She could occasionally lift and carry less than ten

---

[2] Dr. Pardue also completed a mental capacity assessment for Claimant. (Tr. 27, 540-41). However, Claimant does not challenge the ALJ's treatment of Dr. Pardue's opinions regarding Claimant's mental limitations.

6

pounds, but never lift and carry ten pounds or more.  Dr. Pardue noted Claimant had significant limitation in reaching, handling, and fingering, and she could spend only five percent of an eight-hour workday climbing stairs.  Claimant could not spend any time stooping, crouching, or kneeling.  Claimant would have good days and bad days, and Dr. Pardue estimated Claimant would be absent from work more than four times per month because of her impairments or treatments.  Dr. Pardue also indicated that Claimant's ability to work on a sustained basis would be affected by her depression and macular degeneration causing blindness in her left eye.  (Tr. 537-39).

The ALJ referenced Dr. Pardue's residual functional capacity questionnaire, noting that Dr. Pardue determined Claimant "would be limited to a severely reduced range of sedentary work[.]" She determined that "[t]his opinion is given only partial weight, as the limitations offered by Dr. Pardue are more restrictive than would be supported by objective evidence identified in the [C]laimant's treatment records[.]"  (Tr. 27).

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).  She must provide specific, legitimate reasons for rejecting any such opinion, and also must give consideration to several factors in weighing a medical opinion. *Id*.  Moreover, "an ALJ must give good reasons

7

for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

With regard to the opinions expressed by Dr. Pardue on the residual functional capacity questionnaire, the ALJ assigned "partial" weight to Dr. Pardue's opinions. However, by assigning "partial" weight to the opinions, the ALJ's analysis is not specific enough for the Court to determine which portions of Dr. Pardue's opinions were given some weight and which portions were given little if any weight. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability"). Here, although it appears the ALJ may have rejected Dr. Pardue's opinions outright, the Court will not make this determination for the ALJ. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

Moreover, although the ALJ noted Dr. Pardue's limitations were "more restrictive than would be supported by objective medical

evidence identified in the [C]laimant's treatment records[,]" she failed to specifically identify any inconsistencies. *See Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify the claimed inconsistencies . . ., his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

Although the Commissioner is correct that an ALJ is not required to conduct a factor-by-factor analysis of a treating physician's opinion, an ALJ is required to provide "'good reasons in his decision for the weight he gave to the . . . opinion[.]'" *Mounts v. Astrue*, 479 Fed. Appx. 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). On remand, the ALJ should re-evaluate Dr. Pardue's opinions and specifically set forth those portions that are given weight, the portions that are not supported, and specifically discuss the inconsistencies between Dr. Pardue's opinions with the other evidence in Claimant's treatment records. Because the ALJ's re-evaluation of Dr. Pardue's opinions may result in further limitations in the RFC, the ALJ should reassess her findings at steps four and five of the sequential process if necessary.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not

9

applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED** and the case is **REMANDED** for further proceedings consistent with the Opinion and Order.

IT IS SO ORDERED this 27th day of March, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE